# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL RICE, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NORTHAMPTON COUNTY | : | |
| PRISON, et al., | : | No. 10-985 |
|     Defendants. | : | |

## MEMORANDUM

**Schiller, J.**                                                                                                                                                 **February 4, 2013**

Daniel Rice has sued Northampton County Prison ("Prison"), Northampton County, Warden Todd Buskirk, Correctional Officers Darren Wimmer, William Fahr, and James Denofa, Lieutenant William Beers, and John Does 1-25 under 42 U.S.C. § 1983 for injuries arising out of a fall Rice suffered in his prison cell. Correctional Officers Wimmer, Fahr, and Denofa have been voluntarily dismissed from the case. The remaining defendants have filed a motion for summary judgment, which is pending before the Court. For the reasons set forth below, the motion is granted as to Rice's federal claims. In addition, the Court declines to exercise supplemental jurisdiction over his state law claim.

## I. BACKGROUND

Rice was an inmate at the Prison and was housed in the B4 cell. (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts [Pl.'s Resp. to Defs.' Facts] ¶¶ 2, 3.) Rice had been living in this cell for four to six weeks at the time of his fall and was in the first group of inmates to live there. (Pl.'s Counterstatement of Material Facts [Pl.'s Material Facts] ¶¶ 5, 6.) Rice was required to be in his cell every day from 9:00-9:30 p.m. until 6:00-7:00 a.m. (Pl.'s Resp. to Defs.' Facts ¶ 5.) At

the time Rice moved into the B4 cell, the sink area leaked, causing water to pool on the floor around the sink. (Pl.'s Material Facts ¶¶ 10, 12.) Rice and his cellmates were provided with a mop to wipe up the leak, but "that measure proved insufficient" when they were locked in the cell. (*Id.* ¶ 15.)

Rice reported the leak to the Housing Unit Officer, who said he would file a work order to have it repaired. (*Id.* ¶ 18.) Rice continued to complain about the leak and was told that maintenance had been alerted to the problem. (*Id.* ¶ 19.) Correctional Officer Wimmer and other officers filed incident reports with maintenance and reported the leak to lieutenants, but maintenance did not fix the problem. (*Id.* ¶¶ 20, 21.)

Early in the morning on July 23, 2006, Rice put on his sandals, got up from his bed, and walked to the toilet in the cell, noticing the puddle at the sink on his way. (Pl.'s Resp. to Defs.' Facts ¶ 14.) After he used the toilet, and either before or after he washed his hands at the sink, Rice slipped forward, hit his head on the front of the sink, and fell to the ground. (Pl.'s Material Facts ¶ 25.) He asked a cellmate to push the call button in the cell. (*Id.* ¶ 26.) At approximately 2:35 a.m., an officer arrived and summoned Lieutenant Beers for a medical emergency. (*Id.* ¶¶ 26-28.) Lieutenant Beers, along with other officers and a nurse, arrived at the cell. (*Id.* ¶ 29.) Lieutenant Beers kicked Rice's feet multiple times, taunted him by belittling his injuries, and cursed at another inmate who expressed concern about Rice's injury. (*Id.* ¶¶ 31, 33.) The nurse tried to move Rice and "twisted his head," prompting Rice to speak disrespectfully to her and her to leave the cell. (*Id.* ¶ 35.) Rice remained shirtless on his back on the ground; at some point after the nurse left, Lieutenant Beers covered him with a blanket and offered him a pillow. (Defs.' Br. in Reply to Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. Ex. A. [Video].)

At 3:40 a.m., Rice was put on a stretcher, removed from his cell, and brought to the medical

unit. (Pl.'s Material Facts ¶ 43.) Rice was then taken to Easton Hospital by ambulance, and an X-ray was taken of his spine. (Pl.'s Resp. to Defs.' Facts ¶¶ 26, 27.) The results of the X-ray were negative, and Rice received three stitches on his forehead and a prescription for pain medication. (*Id.* ¶¶ 27, 28; Pl.'s Material Facts ¶ 48.) Rice, who was diagnosed with a herniated disc in 2008, testified that he continues to have back pain if he makes certain movements, although after his release, he had a job for six months installing office furniture. (Pl.'s Material Facts ¶ 50; Pl.'s Resp. to Defs.' Facts ¶¶ 29-31.)

At the time of the incident, Warden Buskirk was the Director of Corrections for the Prison. (Pl.'s Material Facts ¶ 1.) The lieutenant on duty was Lieutenant Beers, who is responsible for the whole prison and to whom all officers report. (*Id.* ¶¶ 2, 3.) When he was on duty, Lieutenant Beers made several rounds a night to observe any activity at the Prison. (*Id.* ¶ 4.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the movant does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Thereafter, the nonmoving party demonstrates a genuine issue of material fact if it provides evidence sufficient to allow a reasonable finder of fact to find in its favor at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, a court "must view the facts in the light most favorable to the

nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 32 F.3d 768, 777 (3d Cir. 2009). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

## III. DISCUSSION

### A. Cruel and Unusual Punishment for Conditions of Confinement

Rice sues Warden Buskirk and John Does 1-25 for cruel and unusual punishment under the Eighth Amendment due to their deliberate indifference to the leak in his cell. Under the Eighth Amendment, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). "Prison conditions may amount to cruel and unusual punishment if they cause 'unquestioned and serious deprivations of basic human needs . . . [that] deprive inmates of the minimal civilized measure of life's necessities.'" *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 417-18 (3d Cir. 2000) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)) (alteration and omission in original). "To demonstrate a deprivation of his basic human needs, a plaintiff must show a sufficiently serious objective deprivation, and that a prison official subjectively acted with a sufficiently culpable state of mind, i.e., deliberate indifference." *Id.* at 418 (citation omitted).

"Slippery prison floors are not objectively serious conditions giving rise to Eighth Amendment protection." *Santiago v. Guarini*, Civ. A. No. 03-4375, 2004 WL 2137822, at *2 (E.D. Pa. Sept. 20, 2004) (citing *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) ("[S]lippery prison

4

floors . . . do not state even an arguable claim for cruel and unusual punishment.")). Similarly, in *Askew v. Lehigh County Prison Maintenance Division*, Civ. A. No. 08-1662, 2009 U.S. Dist LEXIS 19331, at *6 (E.D. Pa. Mar. 6, 2009), in which an inmate slipped and fell in his cell due to a puddle caused by leaky pipes, the court held that "slippery floors, even if they cause inmates to fall and injure themselves, do not give rise to constitutional claims."

Rice tries to distinguish these cases because the leaks at issue in those cases were not as "persistent or severe" as the leak in this case. (Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. at 9 n.2.) In fact, the leak in this case had existed for at most four to six weeks, less time than the leak in *Askew*. *Askew*, 2009 U.S. Dist. LEXIS 19331, at *2. Moreover, there is no evidence in *Askew* or *Santiago* to suggest that the leaks in either case were less severe than the one in Rice's cell. As a result, Rice cannot satisfy the first prong of a claim for cruel and unusual punishment—a sufficiently serious objective deprivation—based on a leak in his cell, and this claim is dismissed.

### B. Cruel and Unusual Punishment for Deliberate Indifference to Medical Needs

Rice sues Warden Buskirk, Lieutenant Beers, and John Does 1-25 for cruel and unusual punishment due to their deliberate indifference to his medical needs. To establish cruel and unusual punishment based on medical care, a plaintiff must satisfy a two-pronged test that "requires deliberate indifference on the part of the prison officials and . . . requires the prisoner's medical needs to be serious." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (quoting *West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978)) (internal quotation marks omitted). In defining "deliberate indifference," the Supreme Court has held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety."

*Farmer*, 511 U.S. at 837. The Third Circuit has recognized deliberate indifference where medical care is intentionally refused, delayed for nonmedical reasons, or delayed due to "arbitrary and burdensome procedures." *Lanzaro*, 834 F.2d at 346-47.

None of these markers of deliberate indifference is implicated here. An officer came to Rice's cell in response to the distress call and then summoned other officers and a nurse, who attempted to treat Rice but was rebuffed by him. He was thereafter taken to the medical unit on a stretcher and then transported to the hospital, where an X-ray was taken and his wound was treated. While Rice emphasizes that he was lying on the ground in a puddle of water for up to an hour and that this constitutes a nonmedical delay in treatment, he received (and rejected) medical treatment during that time. The video taken of the incident also reflects that Lieutenant Beers covered Rice with a blanket after he had been on the ground for about twenty minutes and offered him a pillow. Although Rice might have preferred a faster transport to the medical center, being treated by a nurse and covered with a blanket while awaiting a stretcher is a far cry from the deliberate indifference he must demonstrate to succeed on a claim for cruel and unusual punishment.

Rice also notes that Lieutenant Beers kicked his feet and taunted him right after the injury happened, apparently disbelieving that Rice was really injured. This act—which had no effect on his medical care—cannot alone establish deliberate indifference. It did not result in additional injury, nor does it appear to have caused any delay in Rice's treatment. Thus, though Rice's medical needs after the fall may well have been "serious," he has not introduced evidence of deliberate indifference on the part of Warden Buskirk or Lieutenant Beers.

### C. Due Process

Rice concedes that his claim under the Fourteenth Amendment for a due process violation is precluded by the "more-specific-provision rule," which provides that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)) (internal quotation marks omitted). Because Rice's claims for cruel and unusual punishment are governed by the Eighth Amendment, his substantive due process claim is dismissed.

### D. State Law Negligence Claim

Rice has failed to present a viable federal cause of action; only his state law claim for negligence remains. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction. Having dismissed all of Rice's constitutional claims, and in light of Rice's pending lawsuit in state court arising out of this incident, *see* Defs.' Br. in Supp. of Mot. for Summ. J. at 12 n.9, the Court declines to exercise supplemental jurisdiction over the state law negligence claim.

### E. John Doe Defendants

"[A]bsent compelling reasons, district courts may dismiss John Doe defendants when the plaintiff, after being granted a reasonable period of discovery, fails to identify them." *Francis ex rel. Estate of Francis v. Northumberland Cnty.*, 636 F. Supp. 2d 368, 398 (M.D. Pa. 2009) (citation omitted). Rice filed his First Amended Complaint, which included the John Doe defendants, on October 14, 2011; the deadline for fact discovery was October 1, 2012. Given that these defendants

remain unidentified after the completion of discovery, they are dismissed from the case.

## IV. CONCLUSION

Defendants' motion for summary judgment is granted as to Rice's federal claims. As only his state law claim remains, the Court declines to exercise supplemental jurisdiction over it. An Order consistent with this Memorandum will be docketed separately.